# United States Court of Appeals for the Federal Circuit

---

**YITA LLC,**
*Appellant*

**v.**

**MACNEIL IP LLC,**
*Appellee*

---

2022-1373, 2022-1374

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2020-01139, IPR2020-01142.

---

Decided: June 6, 2023

---

MARK P. WALTERS, Lowe Graham Jones PLLC, Seattle, WA, argued for appellant. Also represented by JASON A. FITZSIMMONS, RALPH WILSON POWERS, III, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC.

DAVID G. WILLE, Baker Botts LLP, Dallas, TX, argued for appellee. Also represented by CLARKE STAVINOHA, CHAD C. WALTERS; MICHAEL HAWES, Houston, TX.

---

Before TARANTO, CHEN, and STOLL, *Circuit Judges*.

TARANTO, *Circuit Judge.*

MacNeil IP LLC is the assignee of two U.S. patents, Nos. 8,382,186 and 8,833,834, that were the subject of decisions by the Patent Trial and Appeal Board in inter partes reviews (IPRs) of challenges to all claims of the patents on obviousness grounds presented in petitions filed by Yita LLC.  In IPR 2020-01139, the Board rejected Yita's challenge to all claims (1–7) of the '186 patent, concluding that—although a relevant artisan would have been motivated to combine, and had a reasonable expectation of success in combining, the teachings of the asserted prior-art references to arrive at each challenged claim—"[MacNeil's] evidence of secondary considerations [was] compelling and indicative of non-obviousness."  J.A. 81.  Yita appeals that ruling.  In IPR 2020-01142, the Board, while agreeing with Yita's challenge to claims 13–15 of the '834 patent (a ruling that MacNeil does not appeal), rejected Yita's challenge to claims 1–12.  Yita appeals that ruling.  For the reasons below, we reverse the Board's judgment in the '1139 IPR and affirm its judgment in the '1142 IPR.

I

A

The '186 and '834 patents share a specification, so for simplicity we cite only the specification of the '186 patent. The subject addressed is a "vehicle floor tray . . . thermoformed from a polymer sheet of substantially uniform thickness."  '186 patent, Abstract.  The specification explains that traditional vehicle "floor mats end up not being centered on the area protected"; "pushed up so as to occlude the gas, brake, or clutch pedals"; or "bunched up or folded over" because "[h]uman beings have a tendency to move their feet around" and to "push around the floor mats."  *Id.* col. 1, lines 27, 30–33.  "A need therefore persists," the specification adds, "for a floor tray that will have a more exact fit to the vehicle foot well" and "that stays in place once it is installed."  *Id.* col. 2, lines 4–7.

The specification describes a way to meet this need by creating a floor tray through a process that involves taking a digital scan of a vehicle's foot well, *id.* col. 16, line 30, through col. 17, line 3, then using a thermoform process to give a sheet of polymer the shape of that scan, *id.* col. 17, line 20, through col. 18, line 58. The resulting vehicle tray "fits the surface" of the vehicle floor well "to an enhanced degree of precision." *Id.* col. 17, lines 22–23. In claims 1–7 of the '186 patent, the floor tray must "closely conform[]" to certain walls of the vehicle foot well, *id.* col. 19, line 45; *id.* col. 20, line 2, and in claims 1–12 of the '834 patent, portions of the floor tray must be "within one-eighth of an inch" of certain walls of the vehicle foot well, '834 patent, col. 20, line 39.[1] Figure 1 illustrates the claimed floor tray.



FIG. 1

The '186 patent has seven claims, one of which (claim 1) is independent. The '834 patent has 15 claims, four of

---

[1]    Claims 13–15 of the '834 patent require neither close conformance nor a maximum separation of one-eighth of an inch. *See* '834 patent, col. 22, line 56, through col. 24, line 19.

which (claims 1, 5, 9, and 13) are independent.  Claim 1 of each patent is reproduced below.

1.  A vehicle floor tray thermoformed from a sheet of thermoplastic polymeric material of substantially uniform thickness, comprising:

a central panel substantially conforming to a floor of a vehicle foot well, the central panel of the floor tray having at least one longitudinally disposed lateral side and at least one transversely disposed lateral side;

a first panel integrally formed with the central panel of the floor tray, upwardly extending from the transversely disposed lateral side of the central panel of the floor tray, and closely conforming to a first foot well wall, the first panel of the floor tray joined to the central panel of the floor tray by a curved transition;

a second panel integrally formed with the central panel of the floor tray and the first panel, upwardly extending from the longitudinally disposed lateral side of the central panel of the floor tray, and closely conforming to a second foot well wall, the second panel of the floor tray joined to the central panel of the floor tray and to the first panel of the floor tray by curved transitions;

a reservoir disposed in the central panel of the floor tray;

a plurality of upstanding, hollow, elongate baffles disposed in the reservoir, each of the baffles having at least two ends remote from each other, the central panel, the first

panel, the second panel, the reservoir and the baffles each having a thickness from a point on the upper surface to a closest point on the bottom surface thereof, said thicknesses, as a result of the tray being thermoformed from the sheet of thermoplastic polymeric material of substantially uniform thickness, being substantially uniform throughout the tray;

the baffles each having a width, in any horizontal direction, of more than two times its thickness, the baffles adapted to elevate the shoe or foot of the occupant above fluid collected in the reservoir, and further adapted to impede lateral movement, induced by a change in vehicle speed or direction, of fluid collected in the reservoir, any portion of the reservoir connected to a remote portion of the reservoir by a path formed around ends of the baffles.

'186 patent, col. 19, line 35, through col. 20, line 24.

1. A system including a vehicle and a floor tray for consumer installation into a predetermined foot well of the vehicle, the system comprising:

a vehicle foot well having a floor, a substantially longitudinally disposed first foot well wall upstanding from the floor, a substantially transversely disposed second foot well wall upstanding from the floor and joined to the first foot well wall, a substantially longitudinally disposed third foot well wall upstanding from the floor and joined to the second foot well wall; and

a vehicle floor tray molded from a sheet of polymeric material of substantially

uniform thickness, a central panel of the tray substantially conforming to the floor of the vehicle foot well, a substantially longitudinally disposed first tray wall joined to the central panel by a curved transition and standing up from the central panel to substantially conform to the first foot well wall, a substantially transversely disposed second tray wall joined to the central panel and to the first tray wall by respective curved transitions and standing up from the central panel, the second tray wall substantially conforming to the second foot well wall, a substantially longitudinally disposed third tray wall joined to the central panel and to the second tray wall by respective curved transitions and standing up from the central panel, the central panel and first, second and third tray walls each having an outer surface facing the vehicle foot well and an inner surface opposed to the outer surface, a thickness of the central panel and of the, first, second and third tray walls measured between the outer surface and the inner surface thereof being substantially uniform throughout the tray;

at least 90 percent of that one-third of the outer surfaces of the first, second and third tray walls which are closest to the respective top margins of the first, second or third tray walls being within one-eighth of an inch of the respective foot well walls.

'834 patent, col. 20, lines 4–40.

## B

On June 30, 2020, Yita petitioned for IPRs of the '186 and '834 patents, challenging all claims of each patent. The

Board, acting for the Director of the Patent and Trademark Office, instituted both IPRs on January 13, 2021—IPR 2020-01139 for the '186 patent and IPR 2020-01142 for the '834 patent. The Board issued its final written decisions in both IPRs on January 3, 2022.

1

In its final written decision in the '1139 IPR, the Board held claims 1–7 of the '186 patent not unpatentable for obviousness. The Board first determined that a relevant artisan would have been motivated to combine, and had a reasonable expectation of success in combining, the teachings of three asserted prior-art references—Rabbe, Yung, and Gruenwald—to arrive at claims 1–7. J.A. 13–71. Rabbe, titled "[p]rotective tray for vehicle interiors," is a French patent publication (No. 2,547,252), which (in the English translation used here) discloses "floor mats with raised edges, forming a tray and providing effective protection of the floors and side walls of vehicle interiors." J.A. 1729. The sides of Rabbe's floor mat "perfectly conform to the contour of the vehicle interior." J.A. 1730. Critically, the Board found that "Rabbe discloses the close conformance limitation in claim 1" of the '186 patent. J.A. 39–40. Yung, titled "mat used in cars," is a U.S. patent application publication (Publication No. 2002/0045029 of Application No. 09/903,202), which describes a vehicle floor mat with a middle plastic layer that is "flexible, light weight, and waterproof Polyethylene . . . or Polyethylene–Vinyl Acetate . . . foam." J.A. 1748, 1753 ¶ 11. Gruenwald is a book titled *Thermoforming: A Plastics Processing Guide*, which recites methods of thermoforming. J.A. 1755.

Notwithstanding its determination about motivation to combine and expectation of success in combining the prior-art references to arrive at the inventions claimed in the '186 patent, the Board rejected Yita's obviousness challenge because, the Board concluded, MacNeil's "evidence of secondary considerations [was] compelling and indicative

of non-obviousness." J.A. 81. "In order . . . to accord substantial weight to secondary considerations," the Board recognized, "there must be a 'legally and factually sufficient connection'"—*i.e.*, a nexus—"between the evidence and the patented invention." J.A. 72–73 (quoting *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019)). And "if the marketed product embodies the claimed features, and is coextensive with them, then a nexus is presumed." *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000). The Board found that MacNeil was entitled to a presumption of nexus, J.A. 75, because the Board found that MacNeil's marketed "WeatherTech[] vehicle trays embody the claimed invention and are coextensive with the claims," J.A. 73–74. MacNeil's successful coextensiveness contention necessarily treated as insignificant any difference between close conformance of the tray with the foot well overall and close conformance of the tray with the walls of the foot well recited in claim 1.

The Board recognized that, earlier in its opinion, it had already found that "Rabbe discloses the close conformance limitation," J.A. 39–40, but it found a presumption of nexus nonetheless, J.A. 74–75. The Board stated that its earlier finding "does not establish that close conformance was *well-known* as [Yita] contends." J.A. 75 (emphasis added). And the Board stated, relying on *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317 (Fed. Cir. 2016), that "[t]he Federal Circuit instructs that 'it is the claimed combination as a whole that serves as a nexus for objective evidence; proof of nexus is not limited to only when objective evidence is tied to the supposedly "new" feature(s).'" J.A. 75 (quoting *WBIP*, 829 F.3d at 1330).

The Board then discussed three secondary considerations—commercial success, long-felt but unsolved need,

and industry praise.[2]  It found that "the evidence of [each consideration was] due to the close conforming vehicle floor tray," and—presumably because it already dismissed that fact because close conformance was not "well-known"—it concluded that the evidence on those secondary considerations was "persuasive of non-obviousness."  J.A. 78 (long-felt need); J.A. 79 (industry praise); *see* J.A. 77 (commercial success) (same finding with the addition of one modifier: "*strongly* persuasive of non-obviousness" (emphasis added)).  Giving "substantial weight" to the "evidence of secondary considerations," the Board held claims 1–7 of the '186 patent not unpatentable.  J.A. 81.

2

In its final written decision in the '1142 IPR, the Board held claims 13–15 of the '834 patent unpatentable for obviousness.  Although MacNeil has not appealed that ruling, it is worth noting that, in reaching that conclusion, the Board found unpersuasive MacNeil's secondary-consideration evidence—which Yita asserted at oral argument in this court, without dispute from MacNeil, was identical to the secondary-consideration evidence in the '1139 IPR.  *See* Oral Arg. at 8:55–9:03 (counsel for Yita stating: "It is important to note that the . . . evidence on secondary considerations was identical for . . . both IPRs.").  That evidence, the Board found, "focuse[d] on the *close conformity* of the tray to the vehicle foot well, features that are *not* recited in claims 13–15."  J.A. 136; *see also* J.A. 137 ("[T]he long-felt need demonstrated by [MacNeil's] evidence relates entirely to the *closely-conforming* floor tray . . . ."); J.A. 138 ("[T]he

---

[2]    The Board also discussed two other secondary considerations, competitor licenses and failure of others, but found that the competitor-licenses evidence did not weigh in favor of nonobviousness and that the failure-of-others argument was untimely raised.  MacNeil appears not to challenge those two findings on appeal.

evidence of commercial success of the WeatherTech floor trays leads us to find that the commercial success is due to the *close-conformity* of the trays in the foot well . . . ."); J.A. 139 ("[T]he industry praise of the WeatherTech floor trays is due to the close-conformity of the trays in the foot well . . . .").

With respect to claims 1–12, the Board rejected Yita's challenge at the prima-facie stage of analysis. Specifically, it found that the one-eighth-inch limitation of claims 1–12 was not disclosed by any of the asserted prior-art references. In relying on that finding to hold the prima-facie case unpersuasive (making secondary-consideration evidence immaterial for these claims), the Board declined to consider an argument that Yita raised in a footnote in its reply brief. J.A. 154–55, 157–58. That footnote, which appears in a section addressing what "Rabbe . . . disclose[s]," J.A. 14784, reads: "MacNeil has not established any criticality to the 1/8 inch tolerance limitations in claims 1, 5, and 9, and it would have been obvious to optimize the tray to fit as closely as desired," J.A. 14786 (citing J.A. 15517 ¶ 163; J.A. 3918 ¶ 24). Finding that Yita's petition "*does not* reason that it would have been obvious to modify Rabbe's floor tray to meet the conformance limitations," J.A. 154, the Board declined to consider Yita's reply–footnote position because it was a "*new position*" and "outside the scope of a proper reply under [37 C.F.R. §] 42.23(b)," J.A. 155; *see also* J.A. 158.

Yita timely appealed from both final written decisions on January 14, 2022, within the 63 days allowed by 37 C.F.R. § 90.3(a)(1). We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

II

For a claimed invention to be patentable, the differences between it and the prior art must be such that a relevant artisan at the priority date would not have found the claimed subject matter as a whole obvious. 35 U.S.C.

§ 103(a) (2011).[3]  "Obviousness is a question of law based on underlying facts, including the scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill, and relevant evidence of secondary considerations." *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1331 (Fed. Cir. 2019) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966)); *see KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 406–07, 427 (2007); *Intercontinental Great Brands LLC v. Kellogg North America Co.*, 869 F.3d 1336, 1343–44, 1347 (Fed. Cir. 2017).  Secondary considerations include whether the claimed invention has been commercially successful, whether it solved a long-felt but unsolved need in the art, and whether the relevant industry praised it. *See Graham*, 383 U.S. at 17–18.  To be relevant, such a secondary consideration must have a "legally and factually sufficient connection" (nexus) to the claimed invention.  *Fox Factory*, 944 F.3d at 1373.  A nexus is presumed when a commercial product (if relevantly successful, for example) "is the invention disclosed and claimed in the patent." *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1067 (Fed. Cir. 2020) (quoting *WBIP*, 829 F.3d at 1329).

We review the Board's legal determinations de novo and the Board's factual findings for substantial-evidence support. *See Henny Penny*, 938 F.3d at 1330. "A finding is supported by substantial evidence if a reasonable mind

---

[3]    The parties do not dispute that, as the Board concluded, the version of § 103 that applies to the present IPRs is the version in force before the amendments made by the Leahy–Smith America Invents Act (AIA), Pub. L. No. 112-29, 125 Stat. 284 (2011). *See* J.A. 5 n.5; J.A. 94 n.1.  The parties have not suggested that the AIA changes make a difference here, so § 103 precedents are pertinent whether they involved the pre-AIA or post-AIA version of the provision.

might accept the evidence as adequate to support the finding." *Id.* (citing *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938)).

Yita presents two arguments to us. First, Yita argues that, in the '1139 IPR, the Board made a result-determinative legal error regarding MacNeil's secondary-consideration evidence in rejecting Yita's challenge to claims 1–7 of the '186 patent. Second, Yita argues that, in the '1142 IPR, the Board abused its discretion by not considering Yita's argument raised in a footnote of its reply brief. We agree with Yita's first argument, but we reject its second.

A

In the '1139 IPR, the Board rejected the obviousness challenge to claims 1–7 of the '186 patent—despite determining that a relevant artisan would have been motivated with a reasonable expectation of success to combine the teachings of Rabbe, Yung, and Gruenwald to arrive at the claimed inventions—solely because it found MacNeil's secondary-consideration evidence "compelling." J.A. 81. The Board's finding of nexus, however, rests on legal errors, and once those errors are corrected, the finding is not supported by substantial evidence. The Board's judgment that claims 1–7 of the '186 patent are not unpatentable must therefore be reversed.

After accepting the relevancy of MacNeil's secondary-consideration evidence by finding a presumption of nexus, the Board reasoned that its finding that "Rabbe discloses the close conformance limitation in claim 1" of the '186 patent, J.A. 39–40, did not undermine any determination of nexus to the claimed invention. The Board offered what can be viewed as two reasons. But both are legally incorrect.

First, the Board stated that its finding regarding Rabbe's disclosure "does not establish that close conformance was *well-known* as [Yita] contends." J.A. 75

(emphasis added).  But our case law makes clear that "objective evidence of nonobviousness lacks a nexus if it exclusively relates to a feature that was '*known* in the prior art'"—not necessarily well-known.  *Rambus Inc. v. Rea*, 731 F.3d 1248, 1257 (Fed. Cir. 2013) (emphasis added) (quoting *Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006)); *see also Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1034 (Fed. Cir. 2016) ("[I]f the feature that creates the commercial success was known in the prior art, the success is not pertinent." (quoting *Ormco*, 463 F.3d at 1312)).  Where prior art teaches a feature and a relevant artisan would have been motivated to use it in combination with other prior-art teachings with a reasonable expectation of success to arrive at the claimed invention—as the Board here found—a secondary consideration related exclusively to that feature does not logically undermine the inference from those premises that the claimed invention would have been obvious from the full body of prior art just because the feature was not *well* known.

Second, the Board, citing *WBIP*, stated that "[t]he Federal Circuit instructs that 'it is the claimed combination as a whole that serves as a nexus for objective evidence; proof of nexus is not limited to only when objective evidence is tied to the supposedly "new" feature(s).'"  J.A. 75 (quoting and citing *WBIP*, 829 F.3d at 1330).  But in *WBIP* we recognized that secondary-consideration evidence "may be linked to an individual element" of the claimed invention or "to the inventive combination of known elements" in the prior art.  829 F.3d at 1332.  It was for the latter circumstance, which was the circumstance present in *WBIP*, that this court in *WBIP* made the point relied on by the Board here.  But that rationale, applicable when no single feature (but only the combination) is responsible for the secondary-consideration evidence, does not undermine our case law, just discussed, denying force to a secondary consideration that is exclusively related to a single feature that is in the prior art.

That is this case. The Board found that MacNeil's secondary-consideration evidence "relate[d] entirely" to the close-conformance limitation disclosed in the prior art. J.A. 137; *see also* J.A. 137–39 (finding that the evidence of commercial success and industry praise "is due to the *close-conformity* of the trays in the foot well"). And that finding is supported by substantial evidence. *See, e.g.*, J.A. 1097 (MacNeil arguing in sur-reply that its witness, WeatherTech's Vice President of Product Development, "testified that customers are willing to pay a premium for WeatherTech's trays *primarily* due to their fit in the vehicle, even as he acknowledged that marketing could also contribute" (citing J.A. 9051 ¶¶ 77–78; J.A. 4583, lines 11–16)); J.A. 9056 ¶¶ 83–84 (WeatherTech's Vice President of Product Development stating that "[c]onsumer reviews often point out the closeness of fit as the salient characteristic of the part, or as the reason for purchase" and that "[t]he biggest reason for the WeatherTech FloorLiner's commercial success, based on the feedback received over the years, is that they 'fit' the foot wells for which they were custom-designed, to a degree not achieved by competitors").[4] Thus,

---

[4] We note in particular that the Board found MacNeil's evidence of industry praise to be "relate[d] specifically to the 'close conformance' [feature]," J.A. 139 (citing J.A. 9220 ¶ 171), and that in this court MacNeil does not challenge, but rather expressly defends, the Board's finding regarding industry praise, MacNeil's Response Br. at 71–73. The absence of a challenge to that finding is hardly surprising, because, while MacNeil refers to one article in the record that mentions other features as well, *id.* at 72 (citing J.A. 9892–93), the Board was not required to deem that article significant within the full record on industry praise. Nor, in any event, would this one article be entitled to significant weight in the overall legal weighing of the prior-art and secondary-consideration findings and evidence.

the Board's own findings, in light of the proper application of our precedent, compel the conclusion that MacNeil's secondary-consideration evidence is of no relevance to the obviousness inquiry in this case.

The Board's finding that the WeatherTech floor tray is coextensive with the claimed invention does not alter the result. The coextensiveness inquiry bears only on the presumption of nexus; it does not decide the overall nexus question. And the presumption inquiry compares only the claim with the commercial product. It does not involve the connection between the commercial product and prior art, which governs the final nexus question and here is the decisive problem for MacNeil.

In sum, the secondary-consideration evidence was the only *Graham* factor that the Board deemed to weigh in favor of nonobviousness. For the reasons that we have explained, the finding of secondary considerations lacks substantial-evidence support under the proper legal standard. Because the Board determined that a relevant artisan would have been motivated to combine the teachings of Rabbe, Yung, and Gruenwald to arrive at claims 1–7 of the '186 patent with a reasonable expectation of success, the Board's judgment that those claims are not unpatentable for obviousness must be reversed.

B

Yita's second argument on appeal concerns the Board's rejection of its challenge to claims 1–12 of the '834 patent in the '1142 IPR. Yita contends that the Board abused its discretion by declining to consider Yita's argument about modifying the teaching of Rabbe, an argument that the Board declined to consider because it was presented too late—in a footnote in Yita's reply brief. We see no abuse of discretion by the Board.

The Board's rules of practice provide: "A reply may only respond to arguments raised in the corresponding

opposition, patent owner preliminary response, patent owner response, or decision on institution." 37 C.F.R. § 42.23(b). This regulation means that an "IPR petitioner may not raise in reply 'an entirely new rationale,'" *Henny Penny*, 938 F.3d at 1330–31 (quoting *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1370 (Fed. Cir. 2016)), not "raised in its petition" or "responsive to arguments raised in the patent owner's response brief," *Apple Inc. v. Andrea Electronics Corp.*, 949 F.3d 697, 706 (Fed. Cir. 2020). The regulation "reflects . . . efficiency and fairness interests," *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1368 (Fed. Cir. 2015), and flows from the statutory "requirement that the initial petition identify 'with particularity' . . . 'the grounds for the challenge to each claim,'" *Intelligent Bio-Systems*, 821 F.3d at 1369 (quoting 35 U.S.C. § 312(a)(3)).

The Board "must make [the] judgment[] about . . . when a [r]eply contention crosses the line from the responsive to the new," *Ariosa Diagnostics*, 805 F.3d at 1368—a judgment that we review for abuse of discretion, *Henny Penny*, 938 F.3d at 1330 (citing *Intelligent Bio-Systems*, 821 F.3d at 1367). "The Board abuses its discretion if its decision: '(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact finding; or (4) involves a record that contains no evidence on which the Board could rationally base its decision.'" *Henny Penny*, 938 F.3d at 1330 (quoting *Intelligent Bio-Systems*, 821 F.3d at 1367).

Yita contends that the argument raised in a footnote of its reply brief before the Board—that "it would have been obvious to optimize the tray to fit as closely as desired," J.A. 14786 n.4 (citing J.A. 15517 ¶ 163; J.A. 3918 ¶ 24)—was not a new, untimely argument because "Yita raised the argument in its [p]etition," Yita's Opening Br. at 44. Yita directs us to passages of its petition that, Yita says, anchor its reply argument to those made in its petition. The first such passage, which appears in a section of Yita's petition

that overarchingly argues that "Rabbe . . . discloses [limitation] 1[h]," J.A. 14229 (second bracketing in original), reads: "Rabbe discloses, or at least suggests, having at least 90 percent of the one-third of the outer surfaces of the tray walls closest to the top margins being within one-eighth of an inch of the respective foot well walls," J.A. 14230. Another passage reads: "[A relevant artisan] would have been able to make molds for different vehicle interiors (or different areas of a vehicle's interior) and adjust the mold-making process to achieve even greater conformity with the vehicle interior." J.A. 14237.

We have repeatedly held that the Board acts within its discretion when it declines under section 42.23(b) to consider a new theory of unpatentability raised for the first time in reply. *See, e.g.*, *Intelligent Bio-Systems*, 821 F.3d at 1369–70; *Ariosa Diagnostics*, 805 F.3d at 1367–68. Most notably for the present case, in *Intelligent Bio-Systems*, we affirmed the Board's decision not to consider an argument made on reply because in the original petition the challenger argued only that a reference disclosed a limitation ("Zavgorodny teaches the desired property . . . that the azidomethyl group 'can be removed under very specific and mild conditions.'"), while in the reply the challenger argued that a relevant artisan would have considered it obvious to modify that reference to arrive at the limitation ("[A]n ordinary artisan would have considered it obvious to use deprotecting conditions other than those described in Zavgorodny."). 821 F.3d at 1369 (emphasis omitted). The present case is sufficiently similar to *Intelligent Bio-Systems* that we cannot say that the Board abused its discretion in its ruling here.

Like the petitioner in *Intelligent Bio-Systems*, Yita waited until its reply to present what in substance is an argument that it would have been obvious to a relevant artisan to modify Rabbe to arrive at the one-eighth limitation. This argument was a "meaningfully distinct contention," *Ariosa Diagnostics*, 805 F.3d at 1367, from

those made in Yita's petition, which focused (for the claim limitation at issue) only on what Rabbe discloses. Nor was Yita's new theory within "the scope of a proper reply" to any argument that MacNeil made in its patent owner response. *Intelligent Bio-Systems*, 821 F.3d at 1367. Yita points us to passages in MacNeil's response brief before the Board, but in the cited passages MacNeil argued only about what Rabbe teaches—not what a relevant artisan would have found obvious to modify. *See* J.A. 14499–500 (Mac-Neil arguing in its patent owner response: "Rabbe does not teach 'substantially conforming' first and second tray walls 'being within one-eighth of an inch' as required by [the] [c]laims.").

Yita, as the "master of its complaint," could have "present[ed] [its reply] argument in its petition[] but chose not to." *Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 775 (Fed. Cir. 2018) (quoting *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018)). And the patent owner's response did not justify the new argument in reply. We thus see no abuse of discretion in the Board's decision not to consider the new argument.

## III

For the foregoing reasons, we reverse the Board's judgment in the '1139 IPR holding claims 1–7 of the '186 patent not unpatentable, and we affirm the Board's judgment in the '1142 IPR holding claims 1–12 of the '834 patent not unpatentable.

No costs.

**REVERSED IN PART AND AFFIRMED IN PART**