NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**PICTOMETRY INTERNATIONAL CORPORATION,**
*Appellant*

**v.**

**ROOFR INC.,**
*Appellee*

———————————

2024-2322

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2023-00435.

———————————

Decided:  May 22, 2026

———————————

WILLIAM MILLIKEN, Sterne Kessler Goldstein & Fox PLLC, Washington, DC, argued for appellant.  Also represented by, RICHARD M. BEMBEN, JENNIFER CHAGNON, RICHARD CRUDO, STEVEN PAPPAS, MICHAEL D. SPECHT JONATHAN TUMINARO.

RON HAGIZ, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, argued for appellee.  Also represented by JAMES M. GLASS; YURY KAPGAN, Los Angeles, CA; QUINCY LU, Seattle, WA.

————————————

Before TARANTO, HUGHES, and CUNNINGHAM, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Pictometry International Corp. owns U.S. Patent No. 10,648,800, which claims a process that may be useful as part of a process for measuring a roof using aerial imagery. In the claimed process, a user provides a street address or other location data to a computer, which responds by providing to the user a satellite image of an area that includes the address, with a marker placed somewhere on the image. The user can then move the marker on the image to better correspond to the roof of interest. Once the marker is in the desired location, the user, prompted by the computer, takes steps to confirm that location.

Roofr Inc. successfully petitioned for an inter partes review (IPR) of all claims of the '800 patent under 35 U.S.C. §§ 311–19, and the Patent Trial and Appeal Board held all claims unpatentable for obviousness over combinations of prior-art references. *See Roofr Inc. v. Pictometry International Corp.*, No. IPR2023-00435, 2024 WL 3379556, at *1 (P.T.A.B. July 11, 2024) (*Decision*). In its decision, the Board concluded that a prior-art reference's disclosure of a marker-locking feature taught the claimed "user-acceptance," or confirmation, of the roof's location. On appeal, Pictometry contests the Board's finding that the prior art teaches the '800 patent's "user-acceptance" limitations. We affirm the Board's decision.

I

A

The '800 patent discloses a method that is useful "in the field of measuring roofing dimensions and other attributes, and more particularly pertains to the use of aerial imagery in that field." '800 patent, col. 1, lines 19–21. In the

described method, a user provides to a computer "first location data" corresponding to the roof of interest, such as a street address. *Id.*, col. 1, lines 51–53; col. 3, lines 64–67 (defining "location data" as "information which uniquely identifies geographic position . . . includ[ing] latitude and longitude coordinates [or] street addresses"). The computer then provides the user a satellite image of the area around the specified location, on which is superimposed a visual marker that can be used "to more precisely identify the location of the building roof structure." *Id.*, col. 1, lines 53–59. The user can move the marker to a "final location on top of the building" of interest in the image. *Id.* When the user is satisfied with the placement of the marker, the user can convey acceptance of the placement through a computer input that is "capable of signaling user-acceptance of the final location" of the marker. *Id.*, col. 1, lines 59–62. "User-acceptance" is defined by the patent as "an affirmative step or series of steps or computer input, undertaken by a user to make a selection." *Id.*, col. 5, lines 13–15.

Figures 4A–4D of the '800 patent illustrate the process just described. *See* J.A. 26–29. In Figure 4A, the user is prompted to enter an address and can then click "find address" to search for an aerial image corresponding to the address. '800 patent, col. 9, line 66, through col. 10, line 5. "In response," a screen appears, like the one depicted in Figure 4B, that "depicts imagery . . . of a region" showing the "building . . . with its roof structure." *Id.*, col. 10, lines 5–7. At that point, the computer displays a visual marker somewhere on the image. *Id.*, Fig. 4B. The user is then prompted to move the marker "by click and dragging via computer mouse, arrows, or otherwise" to ensure that it "more precisely identifies" the desired roof structure. *Id.*, col. 10, lines 15–25; Fig. 4C. The place to which the marker was dragged is the "final location," and, critically, the user can confirm the selection of that location by clicking a "confirm selection" button. *See id.*, col. 10, lines 25–28, 30–31.

4      PICTOMETRY INTERNATIONAL CORPORATION v. ROOFR INC.

The patent equates clicking the "confirm selection" button with "user acceptance" of that location. *See id.*, col. 10, lines 30–31. As shown in Figure 4D, the user might then be prompted to check a box that says "I have reviewed the image and confirm my selection is correct" as "a further re-confirmation" that the user has selected the correct image. *Id.*, col. 10, lines 30–38; Fig. 4D.

Independent claim 1 is representative for this appeal. It sets forth the above process from the viewpoint of the computer system furnishing the images and receiving input from the user:

1. A process, comprising:

receiving first location data;

providing visual access to a first image corresponding to the first location data, the first image including a roof structure of a building;

providing a first computer input capable of signaling a designation from a user of a building roof structure location within the first image, wherein the building roof structure location is a geographic position of the building roof structure and is different than the first location data;

receive a designation of the building roof structure within the first image;

**responsive to receiving the designation of the building roof structure location**, **providing a second computer input capable of signaling user-acceptance of the building roof structure location** within the first image, wherein user-acceptance is one or more affirmative steps undertaken by the user to confirm the designation of the building roof structure location; and

> subsequent to receiving the user-acceptance confirming the designation of the building roof structure location, providing a report for the building roof structure.

'800 patent, col. 14, lines 7–29 (emphasis added to highlight disputed "user-acceptance" limitation). Independent claim 11 contains a limitation identical to the one emphasized, *see id.*, col. 15, lines 1–6, and independent claim 17 contains a relevantly similar limitation, *see id.*, col. 16, lines 21–24.

## B

In January 2023, Roofr petitioned for an IPR of all 17 claims of the '800 patent. *See* J.A. 71, 78. Roofr asserted several grounds for challenging the patent's claims as unpatentable for obviousness. J.A. 78. Relevant to this appeal, Roofr argued that claims 1–17 would have been obvious over a combination of two prior-art references: U.S. Patent Application Publication No. 2008/0262789 (Pershing) and U.S. Patent Application Publication No. 2007/0220174 (Abhyanker). *See* J.A. 106. Pershing claims a system and method for measuring the area of a roof from aerial images. J.A. 848. The system can perform image analysis, enabling a user to "closely estimate the size, geometry, and orientation of the building's roof sections." *Id.* Abhyanker claims a system of marker placement in a virtual mapping environment. J.A. 862. Abhyanker describes allowing a user to "drag and drop" a marker to a correct location. J.A. 878–79 ¶ 11. Once the marker has been relocated, the user can "lock" its location as a way of confirming the intended placement. J.A. 882 ¶ 64.

Roofr argued that a relevant artisan would have been motivated to combine Pershing's roof-measuring system with Abhyanker's teachings of a marker-locking mechanism "to specifically designate the geographic position of a roof to be analyzed using a marker, and to include a subsequent user confirmation option to ensure the correct roof is

being analyzed." J.A. 106. Pictometry disputed Roofr's characterization of Abhyanker as teaching the '800 patent's "user-acceptance" limitations. Without requesting a construction, Pictometry argued that Abhyanker's "marker-locking feature is not provided in response to [its] drag-and-drop" and therefore does not "satisfy the temporal aspect" imposed by the limitation's requirement that the provision of the "second computer input" be "responsive to" receiving the chosen marker placement ("designation of the building roof structure location") from the user. J.A. 387–90.

The Board, agreeing with Roofr, held all claims unpatentable for obviousness. *Decision*, at *8. For claims 1 and 11, which contain identical "user-acceptance" limitations, the Board concluded that "'signaling user-acceptance of the . . . location' reads on Abhyanker's locking feature because location acceptance means that the user will not change the location, which is the result of Abhyanker's locking feature." *Id.* at *4.[1] The Board did not agree with Pictometry's proposed temporal requirement on the computer's provision of user-acceptance, though the Board concluded that, even under Pictometry's narrower interpretation, the claim is unpatentable for obviousness over the combination of Pershing and Abhyanker. *See id.* at *3–5.

Pictometry timely appealed the Board's final written decision. We have jurisdiction under 35 U.S.C. §§ 141(c), 319 and 28 U.S.C. § 1295(a)(4)(A).

II

"We review the Board's legal determinations de novo and the Board's factual findings for substantial-evidence

---

[1]    Because claims 1 and 11 contain an identical "user-acceptance" limitation, the Board treated them the same. *See Decision*, at *4.

support." *Yita LLC v. MacNeil IP LLC*, 69 F.4th 1356, 1363 (Fed. Cir. 2023). The ultimate question of obviousness is a question of law, and the Board's resolution is subject to a de novo standard of review, but the answer depends on underlying facts, for which the Board's findings are reviewed only for substantial-evidence support, *id.*, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consolidated Edison Co. of New York v. National Labor Relations Board*, 305 U.S. 197, 229 (1938). We review the Board's claim constructions based on intrinsic evidence without deference. *See Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1055 (Fed. Cir. 2024)

On appeal, Pictometry challenges the Board's determination regarding Abhyanker and the user-acceptance limitation of claim 1. It argues that the Board erred in failing to understand the claim as requiring a temporal component. Specifically, it argues that Abhyanker's lock pushpin mechanism, which allows the user to confirm the roof location, is provided to the user *before* the user designates the correct location with a marker, whereas the '800 patent requires "providing a second computer input capable of signaling user-acceptance of the building roof structure location" (the signal "confirm[ing] the designation of" that location, *i.e.*, the marker's placement, *see* '800 patent, col. 10, lines 30–31) must be "responsive to" and thus occur *after* the user's "designation of the building roof structure location" (*i.e.*, of the placement of the marker). *See* Pictometry Opening Br. at 28–35; '800 patent, col. 14, lines 20–26.

We need not adjudicate the correctness of Pictometry's position about claim interpretation, but we note that Pictometry's argument for a claim construction that would defeat reliance on Abhyanker faces significant obstacles. In the '800 patent, Figures 4A–4D plainly show a "confirm selection" (or "confirm my selection") option on the user's screen from even before the user sends in the address information. It is highly disfavored for those fundamental

embodiments to be excluded from the coverage of the claims as a matter of construction. *See Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1372–73 (Fed. Cir. 2022); *Vitronics Corp. v. Conceptronic, Inc*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). Pictometry therefore must resort to the contention that the confirm-selection options cannot be operational as the required "second computer input" for such confirmation until after a designation has been made, because there is nothing to "confirm" until then. *See* Pictometry Opening Br. at 32 (distinguishing mere display from grant of operational tool); Oral Arg. at 1:43–3:00, https://www.cafc.     uscourts.gov/oral-arguments/24-2322_05042026.mp3.  But that logic would apply similarly to Abhyanker's "locking module," J.A. 882 ¶ 64, whose teaching—which is unmistakably similar in function to that of the claims at issue here—Pictometry therefore could not avoid. The Board made this point when it reasoned that, "as a matter of logic," Abhyanker's "lock pushpin option . . . is provided 'responsive' to the user's location designation" because a user would only accept the location designation once that user has designated a location. *Decision*, at *5.

We need not pursue the claim-construction dispute further. The Board agreed with Roofr that the combination of Pershing and Abhyanker renders the claim obvious even under Pictometry's interpretation, and we see no reversible error in that conclusion. *See id.* Relying on Roofr's rationale, the Board agreed with the petition's suggestion that a relevant artisan, with ordinary creativity, would know to "provide[ ] Abhyanker's lock pushpin option *after* placing a marker." *Id.* (emphasis in original) (citing J.A. 781–82, 822 (Roofr's expert declaration ¶¶ 43, 127)); *see* J.A. 106, 149 (petition describing the advantage of "subsequently confirm[ing] that the roof location is correct" in Abhyanker when combined with another prior-art mapping system). We see no abuse of discretion in the Board's reading of the petition to include this submission. And we see

no lack of substantial evidence to support the Board's determination that a relevant artisan with ordinary ingenuity would see from Abhyanker, directly or by sufficiently motivated modification, a sequence in which the ability to lock the selection (user-acceptance) is not given to the user until after the user moves the marker.

We therefore reject Pictometry's challenge on appeal. The above analysis applies directly to claims 1 and 11. And Pictometry, in presenting a two-paragraph argument about claim 17, says nothing to indicate that claim 17 can survive if claims 1 and 11 do not. *See* Pictometry Opening Br. at 49.

## III

We have considered Pictometry's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the final written decision of the Board.

**AFFIRMED**